UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| RONALD PATTEN, | ) |
| Plaintiff | ) ) ) |
| v. | )   Civil No. 06-203-P-H |
| TOWN OF YORK, | ) ) ) |
| Defendant | ) ) |

### *DECISION RECOMMENDING SUMMARY DISMISSAL OF COMPLAINT*

Ronald Patten has filed a complaint in this court which is captioned as being brought under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. Patten indicates that he is bringing the action also on behalf of Frank Occhipinti. I have granted Patten leave to proceed in forma pauperis.[1]

In his complaint Patten states that the discrimination started in January 2000 and "has been ongoing until the present as a result." With regards to allegations -- prefaced with the title, "TIGTA[2] retaliation in Maine and Massachusetts" -- Patten asserts that during January 2000 he filed a claim with the IRS after Occhipinti and he were involuntarily displaced after paying $6750 in rent to the Lawrence YMCA and after his wrongful termination from the IRS. With respect to events in Maine, Patten claims that a TIGTA officer placed a card in his post office box in York, Maine and, as a consequence

---

[1] Patten is no stranger to this court. In 2002 he filed a complaint against the City of Portland, TIGTA, and the IRS Andover Service Center, Patten v. City of Portland, 2:02-cv-062-GC, which was dismissed by the court. There is also now pending in this court a second lawsuit against the City of Portland, Patten v. City of Portland, 2:06-cv-202-DBH.

[2] I do not know what the letters "TIGTA" represent and I can find no ready explanation in Patten's pleading.

police officers (presumably from the Town of York) forced Patten and Occhipinti out of the York Commons Inn on March 17, 2000. Patten also claims that he was denied reasonable accommodation for medical services at the York Hospital and from Doctor Robertson. In addition, on August 16, 2000, Occhipinti and Patten were arrested by York police as they sought Section 8 housing in a "manner which took unfair advantage of [their] disabilities and publicly advertised [their] debt." Patten asserts that this arrest was part of an entrapment by the TIGTA officer. He further alleges that their encounter with the TIGTA officer eventually resulted in his involuntary displacement from Emmaus House (location unclear), in June 2002 he was harassed at the Portland Public Library, and in May of 2005 Occhipinti and he "were involuntarily displaced again after city of Portland workers … and incorrigibles lynched [them]." Finally, Patten complains that the Portland YMCA failed to grant the pair reasonable accommodation apropos their food allergies and evicted them.

Patten considers Occhipinti and himself to be victims of hate crimes and describes his life as having ended. "I also wish to cite," Patten explains, "the case of Aleksandras Lileikas to extend the statute of limitations indefinitely."

On the same day that Patten filed this complaint he filed an action against the City of Portland (Civ. No. 06-202-P-H) which contains the same allegations of this complaint as well as some further allegations specific to events in Portland, Maine.

With respect to this complaint against the Town of York, I recommend that it be dismissed because it fails to state a claim against the Town of York. See 28 U.S.C. § 1915(e)(2)(B)(ii). Patten describes two events occurring in the Town of York in March and August 2000, well over six years prior to November 20, 2006, the date he filed this

complaint. In addition to being time barred, neither incident presents any facts that would place liability on the Town of York under the Americans with Disabilities Act or the Rehabilitation Act. The decisions to deny accommodation or medical treatment were those of the York Commons Inn and York Hospital and/or Dr. Robertson and those allegations cannot be read to create any liability on the part of the Town of York. As for Patten's complaint that individual York police officers "forced him out of the York Commons Inn" and "arrested us while we sought section 8 housing" (the events in March and August 2000), that conduct, even if somehow unlawful, does not state a claim against the Town of York for disability discrimination under the ADA or the Rehabilitation Act. Assuming that Title II of the ADA imposes duties on the Town of York to draft policies and train officers on the needs of "disabled" persons, Patten does not allege that the town failed to have such polices in place. Police officers who act merely because of inadequate training or because they do not follow procedures taught to them do not thereby create a viable claim that Patten was "denied the benefits of the services . . . of a public entity by reason of his [disability], as required under 42 U.S.C. § 12132." Buchanan v. Maine, ___ F.3d ___, ___, 2006 WL 3317667, * 15 (1st Cir. Nov. 16, 2006). Accordingly, I recommend the court summarily dismiss this pro se complaint for failure to state a claim.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

> Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

December 12, 2006.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge